UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------------------x
MOLLY M. GENTLEMAN,

              Plaintiff,

    -against-

STATE UNIVERSITY OF NEW YORK – STONY BROOK,
MICHAEL DUDLEY, CHANDRANI ROY, JASON TRELEWICZ,
and ALEXANDER ORLOV,

              Defendants.
-------------------------------------------------------------------------------x

**Memorandum of
Decision & Order**
16-cv-2012 (ADS)(AKT)

<u>APPEARANCES:</u>

**Locksley O. Wade, Esq.**
*Attorney for the Plaintiff*
11 Broadway, Suite 615
New York, NY 10004

**Office of the New York State Attorney General**
*Attorneys for the Defendants*
200 Old Country Road, Suite 240
Mineola, NY 11501
        By:    Ralph Pernick, Assistant Attorney General

**SPATT, District Judge:**

On April 25, 2016, the Plaintiff Molly M. Gentleman (the "Plaintiff") commenced this employment discrimination action against her former employer, the State University of New York at Stony Brook ("SUNY") and several individual SUNY employees, namely, the Defendants Michael Dudley ("Dudley"); Chandrani Roy ("Roy"); Jason Trelewicz ("Trelewicz"); and Alexander Orlov ("Orlov," together with SUNY, Dudley, Roy, and Trelewicz, the "Defendants"), alleging violations of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*, and the Due Process Clause of the federal Constitution under 42 U.S.C. § 1983.

On May 1, 2016, the Plaintiff filed an amended complaint as of right, which is now the operative pleading in this case.

Presently before the Court is a motion by the Defendants to dismiss the amended complaint under Federal Rule of Civil Procedure ("FED. R. CIV. P.") 12(b)(1) on the ground that the Court lacks subject matter jurisdiction over the Plaintiff's claims, or, alternatively, under FED. R. CIV. P. 12(b)(6) on the ground that the amended complaint fails to state a claim for relief.

For the reasons that follow, the motion to dismiss is granted in part and denied in part.

## I.     BACKGROUND

The following facts are drawn from the parties' pleadings and are construed in favor of the Plaintiff.   In its discretion, the Court has also considered a June 11, 2012 letter agreement (the "Appointment Letter"), which was cosigned by the Plaintiff and a SUNY official, regarding certain material terms of the Plaintiff's employment.   *See Global Network Communs., Inc. v. City of New York*, 458 F.3d 150, 157 (2d Cir. 2006) (recognizing the district courts' authority in resolving a Rule 12(b)(6) motion to consider "a contract or other legal document containing obligations upon which the plaintiff's complaint stands or falls, but which . . . was not attached to the complaint").   As discussed more fully below, in the Court's view, the viability of the Plaintiff's § 1983 procedural due process claim largely "stands or falls" in accord with the alleged property interests defined by that document.

In her early adult life, the Plaintiff was diagnosed with bipolar disorder, namely, the alleged disability forming the basis of her discrimination claims in this action.

On June 11, 2012, by way of the Appointment Letter, SUNY offered the Plaintiff a position as an Assistant Professor in the Department of Materials Science and Engineering.   As clearly stated in the Appointment Letter, the Plaintiff's position was to be a "term appointment," running from September 1, 2012 to August 31, 2015.

On June 20, 2012, pursuant to the instructions contained in the Appointment Letter, the Plaintiff signed and dated the document, thereby accepting the term position.

The Defendants Dudley and Roy, who are alleged to be management-level SUNY employees, were on notice of the Plaintiff's bipolar disorder since the fall of 2012, when her employment commenced.

At an unspecified time, the Plaintiff allegedly requested a reasonable workplace accommodation that would allow her to "continue with her research without disruption." Although neither the nature of the requested accommodation nor any of the related circumstances is alleged in the amended complaint, Dudley and Roy allegedly ignored and/or denied her request.

Trelewicz and Orlov are alleged to be non-supervisory SUNY employees. On previous occasions, the Plaintiff allegedly made verbal and written complaints of sexist and harassing behavior by Trelewicz and Orolv. However, again, the amended complaint fails to allege any facts regarding the circumstances surrounding these complaints.

On April 24, 2013, the Plaintiff participated in a casual conversation with Trelewicz and Orlov, during which time they made allegedly disturbing comments about the Boston Marathon bombing, which had taken place approximately nine days earlier. In an "attempt[ ] to deflect the darkness [of] the conversation," the Plaintiff allegedly "inject[ed] light humor in the topic."

The amended complaint does not describe how the Plaintiff tried to inject humor into this situation. However, Trelewicz and Orlov allegedly reported the Plaintiff's statements to Dudley, who, in turn, on May 24, 2013, reported them to the SUNY police. Apparently, Dudley's report to the SUNY police included references to the Plaintiff being "frustrated by stress related to work" and "suffering from a mental disorder that was likely to cause self-harm and harm to others." Dudley also allegedly reported to the SUNY police that the Plaintiff had "made comments about 'getting a gun and shooting it.' "

On May 28, 2013, the Plaintiff was escorted out of her laboratory and interviewed by SUNY police officers in connection with an alleged terror threat.

However, according to the amended complaint, after interviewing the Plaintiff, the SUNY police dismissed Dudley's report as false. They also allegedly encouraged the Plaintiff to contact the New York State Division of Human Rights ("NYSDHR"), because "in their view, she [had been] the victim of a false report and workplace discrimination because of her disability."

On an unspecified date, non-party Yacov Shamash, who is alleged to be the Dean of SUNY ("Dean Shamash"), received a "false report of student[ ] complaints" about the Plaintiff. The nature of these supposed complaints is not alleged. However, Dean Shamash allegedly forwarded the report to the tenure committee at SUNY without first discussing it with the Plaintiff – an alleged violation of standard procedures. According to the amended complaint, Dean Shamash did this at the behest of Dudley, Roy, Trelewicz, and Orlov.

On November 14, 2014, SUNY decided not to renew the Plaintiff's employment contract, effectively terminating her employment upon the conclusion of her predetermined term. This decision was made despite the Plaintiff having allegedly received written confirmation that her employment was, in fact, being renewed. However, no facts or evidence relating to this alleged writing are included in the amended complaint.

It is further alleged that several "senior" SUNY employees informed the Plaintiff that her job performance had been "very good." However, allegedly, Dudley and Dean Shamash unilaterally decided to terminate the Plaintiff's employment without soliciting faculty input – again a violation of standard procedures. The Plaintiff also alleges that the timing of this decision somehow prevented her from voicing her concerns to the full faculty. However, again, the amended complaint fails to set forth any specific facts in this regard.

## II.    Relevant Procedural History

Based on these allegations, the Plaintiff asserted causes of action sounding in: (1) disability discrimination under the ADA; (2) discriminatory retaliation under the ADA; (3) § 1983 due process violations; and (4) § 1983 retaliation.

As noted above, on June 10, 2016, the Defendants filed a motion to dismiss the amended complaint in its entirety. The Defendants articulated numerous bases for dismissal, namely: (1) the Second Circuit, interpreting Supreme Court precedent, has held that principles of sovereign immunity bar disability discrimination and retaliation suits under the ADA against State agencies, such as SUNY; (2) the Plaintiff's expectation that her employment contract would be renewed does not constitute a protectable property interest sufficient to sustain a due process claim; (3) even if the Plaintiff had a property interest in continued employment by SUNY, the amended complaint fails to plausibly identify any procedural violations on the part of the Defendants; (4) even if the Plaintiff had a property interest, and even if she plausibly alleged that the Defendants denied her due process, the existence of a meaningful post-deprivation remedy, namely, a New York State Article 78 proceeding, precludes recovery under federal antidiscrimination laws; and (5) the Plaintiff's § 1983 retaliation claim is not based upon any plausible protected activity.

On June 19, 2016, the Plaintiff filed an opposing legal memorandum, together with a purported second amended complaint ("SAC"). The SAC is materially indistinguishable from the amended complaint, except that the Plaintiff's claims based on violations of the ADA are replaced by identical claims under the Rehabilitation Act, 29 U.S.C. § 794 *et seq.* Also, in the SAC, the Plaintiff asserts a cause of action based on common law breach of contract.

The Defendants request that the Court reject the SAC, as the proposed amendments still fail to pass Rule 12(b)(6) muster.

### III. DISCUSSION

#### A. Preliminary Issue: Whether the Court Should Accept the Second Amended Complaint

As an initial matter, the Plaintiff's assertion is not correct that the SAC was properly filed "as of right" within 21 days of the Defendants' dispositive motion. Under Rule 15, a party may amend his pleading "*once* as a matter of course at any time before a responsive pleading is served."

FED. R. CIV. P. 15(a)(1)(B) (emphasis supplied). Relying on this rule, the Plaintiff already filed the amended complaint as of right on May 1, 2016, approximately one week after commencing the action.

Therefore, since "Rule 15(a) allows for only one amendment as of right," the "Plaintiff may not . . . amend as of right for the second time even though the [Defendants] moved to dismiss the amended complaint." *Sullivan v. Schweikhard*, No. 95-cv-276, 1996 U.S. Dist. LEXIS 14664, at *20 (S.D.N.Y. Sept. 30, 1996) (Report and Recommendation) (citing *Washington v. New York City Bd. of Estimate*, 709 F.2d 792, 795 (2d Cir. 1985)), *adopted*, 968 F. Supp. 910 (S.D.N.Y. 1997); *see Gaming Mktg. Solutions, Inc. v. Cross*, 528 F. Supp. 2d 403, 406 n.5 (S.D.N.Y. 2007) ("Permitting only one amendment as of right is a 'sound limitation' because '[a]n unrestricted right to amend as of course easily might become a source of abuse either by encouraging shabby pleading techniques or by providing a potential source of harassment' and 'at some point the opposing party should be allowed to rely on his adversary's pleading so that he is able to prepare an adequate responsive pleading' " (quoting 6 Wright, Miller & Kane, *Federal Practice and Procedure*: Civil 2d § 1480)).

Accordingly, the Court will construe the Plaintiff's SAC as a motion for leave to amend under FED. R. CIV. P. 15.

"Rule 15(a) gives the Court extensive discretion to decide whether to grant leave to amend after the time for amendment as of course has passed." *Gaming Mktg. Solutions, Inc.*, 528 F. Supp. 2d at 406 (citation omitted). In general, such requests should be freely granted unless the proposed amendment would be futile. *See Grullon v. City of New Haven*, 720 F.3d 133, 139-40 (2d Cir. 2013) (citations omitted).

Where, as here, the Plaintiff seeks to further amend his complaint while a motion to dismiss is pending, the Court "has a variety of ways in which it may deal with the pending motion to dismiss, from denying the motion as moot to considering the merits of the motion in light of the

amended complaint." *Schwartzco Enters. LLC v. TMH Mgmt., LLC*, 60 F. Supp. 3d 331, 338 (E.D.N.Y. 2014) (Spatt, J.) (quotation marks and citation omitted).

This Court has previously reasoned that, if the proposed amended complaint does not seek to add new Defendants, and the non-movant has had a sufficient opportunity to respond to the new pleading, then the merits of the pending motion to dismiss ought to be considered in light of the proposed amended complaint. *See id.* (citing *Haag v. MVP Health Care*, 866 F. Supp. 2d 137, 140 (N.D.N.Y 2012)); *see also Conforti Sunbelt Rentals, Inc.*, No. 15-cv-5045, 2016 U.S. Dist. LEXIS 107646, at *20 (E.D.N.Y. Aug. 15, 2016) (Spatt, J.) (applying *Schwartzco*'s reasoning "for the purpose of procedural efficiency").

Applying similar reasoning here, in its discretion, the Court will construe the Defendants' motion to dismiss as if it were directed at the SAC, so that if the SAC cannot survive Rule 12(b) scrutiny, the Plaintiff's motion to further amend her pleading will be denied as futile. *See id.* at 338-39 (quotation marks and citation omitted).

**B.     As to the Defendants' Motion to Dismiss under FED. R. CIV. P. 12(b)(1)**

First, relying on the Supreme Court's decision in *Bd. of Trs. of Univ. of Ala. v. Garrett*, 531 U.S. 356, 121 S. Ct. 955, 259 L. Ed. 2d 866 (2001), and its progeny, the Defendants assert that principles of sovereign immunity shield them from liability for alleged disability discrimination and retaliation under the ADA. Thus, they contend that, absent a waiver of sovereign immunity, the Court lacks subject matter jurisdiction over the Plaintiff's claims under the ADA, and therefore, dismissal is warranted under FED. R. CIV. P. 12(b)(1).

However, as noted above, in the SAC, the Plaintiff replaced her ADA claims with identical claims based on violations of the federal Rehabilitation Act. In opposing dismissal, the Plaintiff argues that, unlike claims under the ADA, New York State has waived its sovereign immunity for

claims brought under the Rehabilitation Act, and therefore, federal subject matter jurisdiction exists. The Court agrees.

Section 504 of the Rehabilitation Act prohibits programs receiving federal funding from discriminating against an individual on the basis of a disability. *See* 29 U.S.C. § 794(a). Since Congress enacted this statute pursuant to its authority under the Spending Clause, a State-run program's receipt of federal funds may be conditioned on the State's waiver of its sovereign immunity. *See Garcia v. SUNY Health Sciences Ctr. of Brooklyn*, 280 F.3d 98, 113 (2d Cir. 2001). Thus, in Title 42, Chapter 21 of the United States Code, entitled "Civil rights remedies equalization," Congress expressly stated its "intent to condition acceptance of federal funds on a state's waiver of its Eleventh Amendment immunity" for violations of Section 504 of the Rehabilitation Act. *See id.* (citing 42 U.S.C. § 2000d-7).

Based on this explicit Congressional abrogation of sovereign immunity, prior to 2001, "New York was under the reasonable belief that it had no immunity" for violations of the Rehabilitation Act. *Forziano v. Indep. Grp. Home Living Program*, No. 13-cv-0370, 2014 U.S. Dist. LEXIS 41358, at *20 (E.D.N.Y. Mar. 26, 2014), *aff'd*, 613 F. App'x 15 (2d Cir. 2015). Relevant here, because the institutions comprising the SUNY educational system, including SUNY Stony Brook, constitute "an integral part of the government of the State [of New York]," it logically follows that, before 2001, SUNY could also be deemed to have labored under the reasonable belief that sovereign immunity provided no shelter from Rehabilitation Act claims. *See, e.g., Dube v. State Univ. of N.Y.*, 900 F.2d 587, 594 (2d Cir. 1990) (observing that "[f]or Eleventh Amendment purposes, SUNY [Stony Brook] is an integral part of the government of the State [of New York] and when it is sued the State is the real party" in interest; further observing that, "SUNY [had] clearly not consented to suit [under § 1983] in a federal forum" and therefore "no relief, either legal or equitable, [was] available against SUNY"); *see also Garcia*, 280 F.3d at 107 (reaffirming *Dube*'s characterization of SUNY schools).

However, in its 2001 decision in *Bd. of Trs. v. Garrett*, the Supreme Court invalidated Congress's abrogation of sovereign immunity for disability claims previously codified in 42 U.S.C. § 2000d-7. Therefore, after *Garrett*, in the absence of a clear Congressional mandate, the States were presumed to be immune against disability claims under the Rehabilitation Act – unless, of course, they could be shown to have intentionally waived that immunity at the time of the complained-of conduct.

So how could a State be shown to have intentionally waived its sovereign immunity against disability claims under the Rehabilitation Act? One way, according to the Second Circuit, was to show that, prior to the Supreme Court's decision in *Garrett*, a State possessed a "colorable basis" to suspect that Congress's abrogation of sovereign immunity may be invalid, but nevertheless continued to accept federal funds under the statute. *See Garcia*, 280 F.3d at 114 n.4.

For present purposes, the Court need not address whether New York possessed a "colorable basis" to question the validity of Congress' abrogation of sovereign immunity before 2001. Rather, in the wake of *Garrett*, and as it relates to allegedly discriminatory conduct occurring *after* that decision, courts in this Circuit agree that "New York's continued acceptance of federal funds under § 504 [of the Rehabilitation Act] . . . constitutes a knowing waiver of sovereign immunity under that provision." *Marino v. City Univ. of N.Y.*, 18 F. Supp. 3d 320, 331 (E.D.N.Y. 2014) (collecting cases).

In this case, accepting the Plaintiff's allegations of disability discrimination and retaliation as true, any actionable conduct occurred after 2012, which is after the decisions in *Garcia* and *Garrett* and "thus at a time when [SUNY]'s continued receipt of federal funds constituted a valid waiver of New York's residual state sovereign immunity." *Id.* at 332. Accordingly, the Plaintiff's claims under Section 504 of the Rehabilitation Act are not barred by principles of sovereign immunity, and the Defendants' motion to dismiss these claims for lack of subject matter jurisdiction is denied.

**C.    As to the Defendants' Motion to Dismiss under** Fed. R. Civ. P. 12(b)(6)

**1.    The Standard of Review**

Under Fed. R. Civ. P. 12(b)(6), a party may move to dismiss a cause of action that "fail[s] to state a claim upon which relief can be granted." "To survive a motion to dismiss, the complaint must plead 'enough facts to state a claim to relief that is plausible on its face,' *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007), and 'allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged,' *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009)." *Otis-Wisher v. Medtronic, Inc.*, 14-cv-3491, 2015 U.S. App. LEXIS 9565, at *2 (2d Cir. June 9, 2015).

**2.    The Plaintiff's Rehabilitation Act Claims against SUNY**

The Plaintiff's first and second causes of action, respectively, allege disability discrimination and retaliation under the Rehabilitation Act. In particular, the first cause of action alleges that SUNY unlawfully terminated the Plaintiff because of her disability. The second cause of action alleges that the Plaintiff was terminated as retaliation for her "attempting to engage in an interactive process, opposing disability discrimination and exercising her rights as allowed under the Rehabilitation Act."

**a.    The First Cause of Action: Disability Discrimination under the Rehabilitation Act**

As noted above, Section 504 of the Rehabilitation Act provides, in relevant part, that "[n]o otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance . . ." 29 U.S.C. § 794(a).

Thus, as this Court has previously recognized, "in order to state a *prima facie* claim based on discrimination under the Rehabilitation Act, the Plaintiff must plausibly allege that: (i) she is disabled within the meaning of the Rehabilitation Act; (ii) she was otherwise qualified for her

position; (iii) she was [terminated] solely because of her disability; and (iv) [SUNY] receives federal funding." *Wilson v. Southampton Hosp.*, No. 14-cv-5884, 2015 U.S. Dist. LEXIS 116179, at *30-*31 (E.D.N.Y. Aug. 28, 2015) (Spatt, J.) (citations omitted).

In this case, only the third and fourth elements of the standard are in dispute. In particular, the Defendants contend that the SAC fails to plausibly allege that: (1) SUNY's decision not to renew the Plaintiff's employment agreement was motivated "solely" by her disability; and (2) SUNY received federal funding, so that the provisions of the Rehabilitation Act apply in this case.

First, it is noted that courts, including this one, have resisted the "overly rigid" theory that a claim under the Rehabilitation Act should be dismissed strictly because the plaintiff "failed to specifically plead that her disability was the 'sole' cause of the alleged discriminatory treatment." *Wilson*, 2015 U.S. Dist. LEXIS 116179, at *32.

For example, in *Alfano v. Bridgeport Airport Servs.*, 373 F. Supp. 2d 1, 4 (D. Conn. 2005), the court held that, although the plaintiff's complaint had failed to use the word "solely," it nevertheless satisfied the liberal pleading standard of FED. R. CIV. P. 8 by "broadly alleg[ing] that 'Defendants terminated Plaintiff's employment due to his actual, of record and/or perceived disability." In this regard, relying on the Supreme Court's decision in *Conley v. Gibson*, 355 U.S. 41, 48, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957), the court noted that "the Federal Rules reject the approach that pleading is a game of skill in which one misstep by counsel may be decisive to the outcome and accept the principle that the purpose of pleading is to facilitate a proper decision on the merits." *Alfano*, 373 F. Supp. 2d at 5. Therefore, the court in *Alfano* concluded that the complaint had sufficiently placed the defendants "on notice of the nature of the claim against them," so that the plaintiff was entitled to develop evidence, consistent with his allegations, that the defendants terminated him "solely" because of his disability. *Id.* at 4.

In the Court's view, the same result is warranted here. As was true in *Wilson*, notwithstanding the Plaintiff's failure in this case to use the word "solely" in describing the motivation behind her termination, the SAC does not plausibly identify any cause for the complained of discrimination other than her alleged disability. *See Wilson*, 2015 U.S. Dist. LEXIS 116179, at *32-33 (citing *Logan v. Matveevskii*, 57 F. Supp. 3d 234, 254 (S.D.N.Y. 2014), for the proposition that the plaintiff in that case "d[id] not appear to be claiming that he was denied a reasonable accommodation for any reason other than his disability").

On the contrary, the SAC clearly and repeatedly alleges that the Plaintiff's Rehabilitation Act claims against SUNY are rooted in unlawful discrimination based on her alleged disability. *See, e.g.*, SAC ¶ 3 ("Plaintiff brings this action . . . for unlawful workplace discrimination based on her disability"); *id.* ¶ 10 (alleging that her request for a reasonable accommodation was denied after she complained that Dudley made "comments about her being unable to meet the requirements of her position because of her disability"); *id.* ¶ 14 (alleging that the police report made by the individual Defendants attributed the Plaintiff's conduct to her "suffering from a mental disorder that was likely to cause self-harm and harm to others"); *id.* ¶ 18 (alleging that SUNY's decision not to renew her employment contract was based on the individual Defendants' report that the Plaintiff was dangerous "because of her disability"); *id.* ¶ 19 (alleging that she was terminated due to the "stigma associated with her disability); *id.* ¶ 22 (alleging that SUNY violated the Rehabilitation Act "by terminating [her] employment because she is a person with a disability and/or perceived as a person with a disability").

Although certain allegations also seem to suggest that Trelewicz and Orlov acted in a hostile manner toward women – *see, e.g.*, SAC ¶ 10 (alleging that the Plaintiff's request for a reasonable accommodation was denied "after making verbal and written harassment complaints against Trelewicz and Alex Orlov for sexism and harassing behavior"); *id.* ¶ 13 (alleging that, during their

April 24, 2013 conversation, Trelewicz and Orlov "expressed their anger about the hiring and sharing of office space with a new woman-employee") – in the Court's view, on the whole, the SAC cannot plausibly be read as stating a claim for gender-based discrimination.

The Court reaches a similar conclusion with respect to whether the SAC plausibly alleges that SUNY or its Department of Materials Science and Engineering received federal funding at the times in question, as is required by the statute. *See* 29 U.S.C. § 794(a) (extending protection only to disabled individuals who are excluded from the participation in, denied the benefits of, or subjected to discrimination under "any program or activity receiving Federal financial assistance").

Concededly, it is noted that the SAC makes no explicit reference to whether SUNY, directly or indirectly, receives federal funds or assistance. Further, it is noted that, under similar circumstances, some courts have dismissed Rehabilitation Act claims on the ground that they do not state a claim for relief. *See S.S. v. Whitesboro Cent. Sch. Dist.*, No. 11-cv-0036, 2012 U.S. Dist. LEXIS 11727, at *21-*22 & n.4 (N.D.N.Y Jan. 31, 2012) (collecting cases); *Maccharulo v. Gould*, 643 F. Supp. 2d 587, 602 (S.D.N.Y. 2009) (dismissing claim under the Rehabilitation Act because the complaint failed to allege that the defendants received federal funding); *Murphy v. Beavex, Inc.*, No. 06-cv-1109, 2007 U.S. Dist. LEXIS 17069, at *1-*2 (D. Conn. Mar. 12, 2007) (granting motion to dismiss where the plaintiff failed to "allege that [the defendant] [was] subject to the Rehabilitation Act by virtue of receiving some form of federal funding"); *David v. Chu*, No. 85-cv-5464, 1986 U.S. Dist. LEXIS 29237, at *4 (S.D.N.Y. Feb. 18, 1986) (dismissing complaint as frivolous where "there [was] no allegation that any of the defendants receive federal funding rendering them subject to claims under the Rehabilitation Act").

However, under the facts and circumstances of this case, the Court finds that a more flexible approach is warranted. Initially, the Second Circuit has repeatedly noted that SUNY is so integral to the State's government that, when it is sued, New York is the real party in interest. *See Dube*, 900

F.2d at 594; *Garcia*, 280 F.3d at 107.  For present purposes, this is relevant because, as noted above, courts have recognized that New York, and by extension, SUNY, may be exposed to suit under the Rehabilitation Act precisely because it accepts federal funding.  *See Marino*, 18 F. Supp. 3d at 331.

Therefore, given this information, together with the fact that the Defendants do not affirmatively deny receiving federal funding, "[a]lthough it is not alleged in the Complaint, the Court finds it safe to assume that [SUNY] receives some federal financial assistance."  *Collins v. City of New York*, 156 F. Supp. 3d 448, 458 n.7 (S.D.N.Y. 2016).

Accordingly, the Plaintiff's first cause of action based on disability discrimination under the Rehabilitation Act is provisionally dismissed for failure to allege the federal-funding element of the appropriate legal standard.  However, the Plaintiff will be given 20 days from entry of this Order to cure this deficiency through an amended complaint.

Finally, it is noted that the Defendants appear to contend, alternatively, that the Plaintiff's first cause of action fails because the NYSDHR already investigated her disability discrimination claim and found it to lack merit.  This proposition could be liberally construed as raising a collateral estoppel question – that is, whether the Plaintiff's federal disability discrimination claims are precluded by the NYSDHR's "no probable cause" determination. However, the Defendants' argument is vastly underdeveloped, having been raised by way of a single sentence in their reply without any citation to relevant legal authority.  In the Court's view, this showing is insufficient to warrant the relief sought.

    b.    **The Second Cause of Action: Retaliation under the Rehabilitation Act**

As noted above, the Plaintiff's retaliation claim alleges that that she was unlawfully terminated in retaliation for: (1) "attempting to engage in an interactive process," namely, seeking a reasonable workplace accommodation; and (2) "opposing disability discrimination," namely, lodging

complaints against Dudley for stating that the Plaintiff could not meet the requirements of her position because of her disability.

In their opening legal memorandum, which was submitted prior to the filing of the SAC, the Defendants substantially repeated their sovereign immunity argument, contending only that the Plaintiff's retaliation claim should be dismissed because SUNY is not subject to suit under the ADA. However, as discussed more fully above, this argument was rendered moot by the SAC, which replaced the ADA claims with similar claims under the Rehabilitation Act.

In reply, the Defendants maintained that the retaliation claim should be dismissed. However, as set forth below, their new arguments also lack merit.

Initially, it is noted that the Defendants failed to address the Plaintiff's allegation that she engaged in protected activity by complaining about Dudley's discriminatory remarks. There is no question that such complaints, if proven, would constitute protected activity under the statute. *See, e.g.*, *Sumner v. United States Postal Serv.*, 899 F.2d 203, 209 (2d Cir 1990).

Further, the Defendants concede that requesting a reasonable accommodation is a protected activity. However, they argue that the SAC nevertheless fails to state a plausible claim for relief because SUNY's alleged denial of the Plaintiff's request for a reasonable accommodation cannot constitute a retaliatory adverse employment action. *See* Defs. Reply at 6 ("Although making a request for a reasonable accommodation is protected activity, the denial of the accommodation cannot be both the substantive violation and the adverse action essential for a retaliation claim"). However, this argument misses the mark.

Contrary to the Defendants' contention, the adverse employment action alleged in the SAC is not the denial of a reasonable accommodation. Rather, it is the non-renewal of the Plaintiff's employment contract, *see* SAC ¶ 26 (alleging, as the basis for her retaliation claim, that she was "wrongfully terminated by SUNY" after "attempting to engage in the interactive process"), and there

can be no dispute that "[t]ermination is indeed the archetypal example of an adverse employment action," *Ragin v. E. Ramapo Cent. Sch. Dist.*, No. 05-cv-6496, 2010 U.S. Dist. LEXIS 32576, at *70 (S.D.N.Y. Mar. 31, 2010), *aff'd*, 2011 U.S. App. LEXIS 6588 (2d Cir. Mar. 31, 2011).

Accordingly, to the extent it seeks to dismiss the Plaintiff's second cause of action based on retaliation under the Rehabilitation Act, the Defendants' motion is denied.

### 3.  The Plaintiff's Breach of Contract Claim Against SUNY

The Plaintiff's third cause of action alleges that SUNY breached its employment agreement with the Plaintiff by terminating her "after [they] had reached an agreement on her continued employment."  *See* SAC ¶ 31; *see also id.* ¶ 17 (alleging that the Plaintiff received "a written renewal of her employment").  However, despite apparently seeking to dismiss the SAC in its entirety, the Defendants failed to set forth any substantive argument regarding this claim.

Accordingly, to the extent the Defendants purport to seek dismissal of the Plaintiff's third cause of action based on breach of contract, their motion is denied.

### 4.  The Plaintiff's § 1983 Claims against the Individual Defendants

Finally, the Plaintiff's fourth and fifth causes of action, respectively, allege § 1983 due process and retaliation claims against the individual Defendants.

### a.  The Fourth Cause of Action: § 1983 Procedural Due Process

The fourth cause of action alleges that Dudley, Roy, Trelewicz, and Orlov, as state actors, deprived the Plaintiff of her right to due process by "deny[ing] her right to . . . redress her complaint under clearly establish[ed] laws outlawing workplace discrimination . . ."

Although this description is somewhat vague, it appears that two discrete events leading up to the ultimate decision not to renew the Plaintiff's employment contract form the basis of her Constitutional claim.

First, Dudley, Roy, Trelewicz, and Orlov – allegedly acting with a discriminatory motive – induced Dean Shamash to present students' complaints about the Plaintiff to the tenure committee

without giving the Plaintiff an opportunity to be heard in her own defense. The Plaintiff contends that this conduct gives rise to a due process claim because it violated procedures entitling her to "face her accusers."

Second, based on the false police report submitted by Dudley, Roy, Trelewicz, and Orlov – which itself was allegedly based on discriminatory animus – Dean Shamash and Dudley unilaterally decided not to renew the Plaintiff's employment contract without first seeking the full faculty's input. Again, the Plaintiff contends that this conduct gives rise to a due process claim because it violated procedures entitling her to "voic[e] her concerns to the full faculty."

The Court will now turn to the parties' substantive contentions.

i.  **As to Whether the Plaintiff Plausibly Alleged a Constitutionally Protected Property Right**

The Defendants argue principally that the Plaintiff's mere expectation that her employment contract would be renewed does not constitute a protectable property interest sufficient to sustain a due process claim. The Court disagrees.

"Section 1983 provides a civil claim for damages against any person who, acting under color of state law, deprives another of a right, privilege, or immunity secured by the Constitution or the laws of the United States." *A.F.C. Enters. v. N.Y. City Sch. Constr. Auth.*, No. 98-cv-4534, 1999 U.S. Dist. LEXIS 23401, at *21-*22 (E.D.N.Y. June 24, 1999) (citing 42 U.S.C. § 1983). Relevant here:

> In order to state a [§ 1983] claim for deprivation of property or liberty without due process of law, "a plaintiff must 'first identify a property [or liberty] right, second show that the state deprived him of that right, and third show that the deprivation was effected without due process.' " *Local 342, L.I. Pub. Serv. Employees v. Town Bd. of Huntington*, 31 F.3d 1191, 1194 (2d Cir. 1994) (quoting *Mehta v. Surles*, 905 F.2d 595, 598 (2d Cir. 1990) (per curiam)). Thus, the threshold inquiry is whether the plaintiff has demonstrated the existence of a constitutionally protected property or liberty interest. *See Board of Regents v. Roth*, 408 U.S. 564, 569-71, 33 L. Ed. 2d 548, 92 S. Ct. 2701 (1972); *Walentas v. Lipper*, 862 F.2d 414, 418 (2d Cir. 1988). Absent such an interest, no process is "due." *See General Elec. Co. v. New York State Dep't of Labor*, 936 F.2d 1448, 1453 (2d Cir. 1991).

*Id.* at 22-*23.

Although the federal Constitution protects property interests, it does not create them. *See Rehman v. State Univ. of N.Y.*, 596 F. Supp. 2d 643, 656 (E.D.N.Y. 2009) (Spatt, J.). Rather, "[p]roperty interests 'are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law – rules or understandings that secure certain benefits and that support claims of entitlement to those benefits.' " *Id.* (quoting *Roth*, 408 U.S. at 577).

In this regard, this Court's prior opinion in *Rehman v. State Univ. of New York* – the facts of which are remarkably similar to those at issue here – is instructive. As in this case, by way of a written agreement, the plaintiff in *Rehman* was offered a term position as an Assistant Professor at SUNY Stony Brook. Despite allegedly receiving positive feedback about the quality of his job performance, the plaintiff alleged that he was discriminated against by his supervisors on the basis of his ethnicity and religion. Eventually, this alleged mistreatment culminated in the non-renewal of his employment, a decision allegedly based partly on false statements contained in an unfavorable performance evaluation. As in this case, the plaintiff in *Rehman* commenced an action against SUNY and several administrators alleging violations of State and federal antidiscrimination laws; breach of contract; and a § 1983 procedural due process claim.

In analyzing the due process claim under Rule 12(b)(6), this Court wrote the following:

> [T]he plaintiff's employment was dictated by the appointment letter of March 29, 2002, which by its express terms was a term appointment from August 1, 2002 to July 31, 2003. Although the plaintiff's term was renewed for the period from August 1, 2003 through July 31, 2007, he had no right to renewal or a constitutionally protected property interest in his expectation of renewal. In addition, the plaintiff points to no specific SUNY Stony Brook policy or practice sufficient to create an implied understanding that his contract would be continually renewed. *See Donato* [v. *Plainview-Old Bethpage Cent. Sch. Dist.*], 96 F.3d [623] 629 [2d Cir. 1996] (citing *Perry v. Sindermann*, 408 U.S. 593, 603, 92 S. Ct. 2694, 2700, 33 L. Ed. 2d 570 (1972) (adherence to a pattern of conduct could create an expectation of continued employment)); *Ezekwo v. New York City Health Hospitals Corp.*, 940 F.2d 775, 783 (2d Cir. 1991) (finding a property interest in Chief Resident position where hospital adopted an established policy of awarding the position to all third year residents on a rotating basis).

*Rehman*, 596 F. Supp. 2d at 657 .

In this case, the Plaintiff's employment was dictated by the Appointment Letter, the terms of which make clear that her position would be a term appointment from September 1, 2012 to August 31, 2015.

As in *Rehman*, the Court finds that, based on the Appointment Letter alone, the Plaintiff had no right to renewal or a constitutionally protected property interest in her expectation that renewal might be forthcoming. *See Spanierman v. Hughes*, 576 F. Supp. 2d 292, 301 (D. Conn. 2008) (noting that a § 1983 plaintiff must plausibly allege that she possessed "more than just a 'unilateral expectation' " that her employment contract would be renewed" (quoting *Furlong v. Shalala*, 156 F.3d 384, 393 (2d Cir. 1998)). Further, as in *Rehman*, the Plaintiff in this case has failed to plausibly allege that any specific SUNY policy or practice created an implied understanding that her contract would be renewed at the end of the term.

On the contrary, the Appointment Letter expressly incorporates by reference, and makes the Plaintiff's appointment subject to the Policies of the SUNY Board of Trustees. Regarding term appointments, these policies state unequivocally that "[n]o term appointment, of itself, shall be deemed to create any manner of legal right, interest or expectancy in any other appointment or renewal." *See* SUNY Policies of the Bd. of Trs., Title D, § 4.

However, unlike in *Rehman*, the Plaintiff in this case specifically alleges that she received written confirmation that her term would be renewed – a critical fact that the Court must accept as true for purposes of this motion. In the Court's view, notwithstanding any rights and expectations arising from the Appointment Letter, the existence of a separate written commitment by SUNY that the Plaintiff's employment would be renewed, if proven, may constitute "an independent source" of understanding – a contractual right – "that support[s] [the Plaintiff's] claims of entitlement to" a constitutionally protected benefit. *See Rehman*, 596 F. Supp. 2d at 656; *see also Petrella v. Siegel*, 843 F.2d 87, 89 (2d Cir. 1988) ("[I]t is well settled that when a government employee has tenure or *a*

*contract right* to continued employment, that right constitutes 'property' that is protected by the fourteenth amendment's due process clause") (emphasis supplied).

Accordingly, to the extent the Defendants seek to dismiss the Plaintiff's § 1983 procedural due process claim on the ground that the Plaintiff failed to plausibly allege a protectable property interest, their motion is denied.

  ii.  **As to Whether the Plaintiff Plausibly Alleged a Violation of Her Property Interest**

The Defendants further argue that, even if the Plaintiff had a constitutionally-protected property interest in continued employment by SUNY, the SAC fails to plausibly allege that she was deprived of this interest without due process of law. For substantially the same reasons as outlined above, the Court again disagrees.

Stated simply, if, in fact, the Plaintiff's term of employment was renewed by way of a written agreement, then it is beyond dispute that the Fourteenth Amendment entitled her to a hearing at which she could, in a sense, "face her accusers" and "voice her concerns" prior to being terminated. *See Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542, 105 S. Ct. 1487, 84 L. Ed. 2d 494 (1985) (noting that an "essential principle of due process is that the deprivation of . . . property 'be preceded by notice and opportunity for hearing appropriate to the nature of the case' " (quoting *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 313, 70 S. Ct. 652, 94 L. Ed. 865 (1950)); *Petrella*, 843 F.2d at 89 (noting that, "[r]egardless of possible state law remedies, interference with [a contract right to continued employment] without due process is a violation of the fourteenth amendment subject to redress under 42 U.S.C. § 1983"); *Haiyan v. Hamden Pub. Schs.*, No. 10-cv-767, 2011 U.S. Dist. LEXIS 76708, at *31 (D. Conn. July 15, 2011) ("An employee who possesses a property right in continued employment must be afforded a pre-termination opportunity to respond to the charges against her coupled with a post-termination administrative procedure").

Accordingly, to the extent the Defendants seek to dismiss the Plaintiff's § 1983 procedural due process claim on the ground that the Plaintiff failed to plausibly allege a deprivation of her property right to continued employment, their motion is denied.

### iii. As to Whether a Sufficient Post-Deprivation Remedy Existed under State Law

Finally, the Defendants contend that, even if the Plaintiff possessed a constitutionally-protected property interest; and even if she plausibly alleged that the Defendants denied her due process, the existence of a meaningful post-deprivation remedy, namely, a New York State Article 78 proceeding, precludes her recovery under federal antidiscrimination laws.

Initially, the Plaintiff failed to address this argument and therefore may be deemed to have conceded the point. *See Scott v. JPMorgan Chase & Co.*, No. 13-cv-646, 2014 U.S. Dist. LEXIS 11691, at *31-*33 (S.D.N.Y. Jan. 30, 2014) (collecting cases), *aff'd*, 2015 U.S. App. LEXIS 4182 (2d Cir. Mar. 17, 2015); *Wasserman v. Maimonides Med. Ctr.*, 970 F. Supp. 183, 192 (E.D.N.Y. 1997) (noting, with respect to the plaintiff's federal due process and equal protection claims, that he "apparently concedes that the claim fails, as evidenced by his lack of opposition to the defendants' motion to dismiss his Constitutional claim"). On that basis alone, the Court could dismiss the § 1983 due process claim.

However, dismissal is also warranted because, as the Defendants persuasively argue, the Plaintiff's Constitutional claim is barred by the adequate post-deprivation process that was available to her under New York State law.

"When reviewing alleged procedural due process violations, the Supreme Court has distinguished between (1) claims based on established state procedures and (2) claims based on random, unauthorized acts by state employees." *Federico v. Bd. of Educ. of the Pub. Sch.*, 955 F. Supp. 194, 201 (S.D.N.Y. 1997); *see Ahmed v. Town of Oyster Bay*, 7 F. Supp. 3d 245, 254 (E.D.N.Y. 2014).

It is well-settled that where, as here, the allegedly random, unauthorized acts of State employees deprived an individual of a property right, no due process claim will exist "so long as the

state provides a meaningful postdeprivation remedy." *Id.* (quoting *Hellenic Am. Neighborhood Action Comm. v. City of New York*, 101 F.3d 877, 880 (2d Cir. 1996)).

Further, in such situations, it is equally well-settled that a special proceeding under Article 78 of the CPLR is a "perfectly adequate" post-deprivation remedy for aggrieved individuals. *See id.* at 201-02 (collecting Second Circuit authorities for the proposition that "[o]ur Court of Appeals has held on numerous occasions that an Article 78 proceeding is a 'perfectly adequate postdeprivation remedy in [ ] situations' involving deprivations of liberty or property interests where such deprivations result from random and arbitrary acts of state employees"); *see also Polito v. City of New York*, No. 15-cv-2301, 2016 U.S. Dist. LEXIS 88171, at *16 (E.D.N.Y. July 7, 2016) (citing "cases involving random and unauthorized conduct" where "the Second Circuit ha[d] consistently found that the availability of a postdeprivation Article 78 proceeding provide[d] a plaintiff with a meaningful opportunity to challenge agency action sufficient to ensure due process"); *Claudio v. Mattituck-Cutchogue Union Free Sch. Dist.*, 955 F. Supp. 2d 118, 128 (E.D.N.Y. 2013) (noting that Article 78 "provides a dismissed municipal employee with an avenue for challenging his termination as arbitrary and capricious and contrary to law . . . The availability of an adequate post-deprivation procedure for reviewing the propriety of the dismissal means that there has been no constitutional violation").

This remains true "even though the petitioner may not be able to recover the same relief [in an Article 78 proceeding] that he could in a § 1983 suit." *Federico*, 955 F. Supp. at 202 (quoting *Hellenic Am. Neighborhood Action Comm.*, 101 F.3d at 881).

In this case, the Plaintiff does not allege that she ever attempted to bring an Article 78 proceeding in State court. Nor did she plausibly allege any basis for concluding that such a remedy was unavailable or inadequate. Under these circumstances, namely, where "the plaintiff had available adequate process, [she] cannot be said to have been 'deprived of due process simply

because [she] failed to avail [herself] of the opportunity.' " *See Claudio*, 955 F. Supp. at 129 (quoting *Hellenic Am. Neighborhood Action Comm.*, 101 F.3d at 881).

Accordingly, to the extent the Defendants seek to dismiss the Plaintiff's § 1983 procedural due process claim on the ground that any right to federal relief is precluded by the existence of an adequate post-deprivation remedy under State law, their motion is granted.

### b.    The Fifth Cause of Action: § 1983 Retaliation

The fifth cause of action alleges that Dudley and Roy unlawfully terminated the Plaintiff's employment as retaliation for her "attempt[ ] to engage[ ] in her right to due process under clearly establish[ed] laws outlawing workplace discrimination . . ."

In the Court's view, this claim is a somewhat unclear amalgamation of the Plaintiff's other causes of action sounding in Rehabilitation Act violations against SUNY and § 1983 procedural due process violations against the individual Defendants. In particular, it is not clear whether the Plaintiff is alleging that the protected activity giving rise to her § 1983 retaliation claim is: (1) her attempt to secure pre-termination process, such as a hearing and opportunity to be heard, from SUNY; or (2) her attempt to obtain entitlements under the Rehabilitation Act, namely, a reasonable accommodation, and/or her opposition to allegedly discriminatory remarks.

With respect to the first assumption, her claim fails because, as discussed more fully above, there is no plausible allegation that the Plaintiff did, in actuality, take any steps to secure the post-deprivation process available to her in the form of an Article 78 proceeding, despite the apparent adequacy and availability of that remedy.

With respect to the second assumption, the Court finds this claim to be impermissibly duplicative of the Plaintiff's second cause of action, which is based on retaliation under the Rehabilitation Act. In this regard, it is noted that the only party against whom the Plaintiff may seek redress for an alleged retaliatory discharge based on violations of the Rehabilitation Act is SUNY. Any similar claims against Dudley and Roy are legally insufficient because the statute does

not provide for individual liability. *See Oslzly v. Rosenblatt*, No. 14-cv-3638, 2016 U.S. Dist. LEXIS 5647, at *6–*7 (E.D.N.Y. Jan. 15, 2016) (dismissing claims on the ground that the Rehabilitation Act "does not permit liability against individual defendants"). The Plaintiff may not contravene this rule simply by invoking § 1983 as an alternative basis for relief.

In either case, except as already discussed in this opinion, the SAC fails, as a matter of law, to allege sufficient facts to make it plausible that the Plaintiff engaged in protected activity for which the individual Defendants can be said to have unlawfully retaliated.

Therefore, to the extent that the Defendants seek to dismiss the Plaintiff's § 1983 retaliation claim on the ground that it fails to plausibly allege a protected activity, their motion is granted.

## IV.    CONCLUSION

Based on the foregoing, the Court directs the following:

(1) Consistent with this opinion, the Court grants the Plaintiff leave to file a Third Amended Complaint within 20 days after the entry of this Order;

(2) The Court grants the Defendants' motion to dismiss the fourth and fifth causes of action based on § 1983 due process violations and § 1983 retaliation, respectively. Accordingly, this action is dismissed in its entirety as against the individual Defendants and the official title of this action shall be amended as follows:

--------------------------------------------------------------------------------x
MOLLY M. GENTLEMAN,

Plaintiff,

-against-

STATE UNIVERSITY OF NEW YORK – STONY BROOK,

Defendant.
--------------------------------------------------------------------------------x

(3) The Court also provisionally grants the Defendants' motion to dismiss the first cause of action against SUNY based on disability discrimination under the Rehabilitation Act. If the Plaintiff's purported Third Amended Complaint again fails to include plausible allegations that SUNY or its Department of Materials Science and Engineering received federal funding at the times in question, as required by the statute, then the Defendants may renew their request that the first cause of action be dismissed; and

(4) The Court denies the Defendants' motion to dismiss the second and third causes of action against SUNY based on retaliatory discharge under the Rehabilitation Act and common law breach of contract, respectively.

This case is respectfully referred to United States Magistrate Judge A. Kathleen Tomlinson for the completion of discovery.

It is **SO ORDERED:**

Dated:  Central Islip, New York
        November 21, 2016              /s/ Arthur D. Spatt_____
                                       ARTHUR D. SPATT
                                       United States District Judge